1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    SAN JOSE DIVISION

4

5    UNITED STATES OF AMERICA,        )   CR-18-00348 LHK
                                      )
6              PLAINTIFF,             )   SAN JOSE, CALIFORNIA
                                      )
7         VS.                         )   OCTOBER 30, 2019
                                      )
8    BRANDON GLOVER,                  )   PAGES 1-25
                                      )
9              DEFENDANT.             )
     _____ )

10

11                   TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE LUCY H. KOH
12                 UNITED STATES DISTRICT JUDGE

13

14    A P P E A R A N C E S:

15    FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                             BY:  SUSAN KNIGHT
16                                AMIE D. ROONEY
                             150 ALMADEN BOULEVARD, SUITE 900
17                           SAN JOSE, CALIFORNIA  95113

18    FOR THE DEFENDANT:     JACHIMOWICZ LAW GROUP
                             BY:  ALBIE B. JACHIMOWICZ
19                           1530 THE ALAMEDA, SUITE 115
                             SAN JOSE, CALIFORNIA  95126

20
                             LAW OFFICES OF CARLEEN R. ARLIDGE
21                           BY:  CARLEEN R. ARLIDGE
                             111 WEST ST. JOHN STREET, SUITE 555
22                           SAN JOSE, CALIFORNIA  95113

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595

24

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER

```
1    SAN JOSE, CALIFORNIA                    OCTOBER 30, 2019

2                       P R O C E E D I N G S

3         (COURT CONVENED AT 9:57 A.M.)

4              THE COURT:  OKAY.  LET'S DO --

5              THE CLERK:  RECALLING CASE 18-00-348, UNITED STATES

6    VERSUS BRANDON CHARLES GLOVER.

7              THE COURT:  THE DEFENDANTS NEED TO BE ARRAIGNED; IS

8    THAT CORRECT?

9              MS. KNIGHT:  YES, YOUR HONOR.

10        GOOD MORNING, YOUR HONOR.

11        SUSAN KNIGHT FOR THE UNITED STATES.

12             MR. JACHIMOWICZ:  AND GOOD MORNING, YOUR HONOR.

13        ALBIE JACHIMOWICZ AND CARLEEN ARLIDGE FOR MR. GLOVER.

14   MR. GLOVER IS PRESENT.

15             MS. ROONEY:  AND AMIE ROONEY FOR THE UNITED STATES AS

16   WELL, YOUR HONOR.  THANK YOU.

17             THE COURT:  OKAY.  GOOD MORNING AND WELCOME.

18        SO WE'RE GOING TO DO EACH DEFENDANT INDIVIDUALLY; IS THAT

19   CORRECT?

20             MS. KNIGHT:  YES, YOUR HONOR.  THANK YOU.

21             THE COURT:  ALL RIGHT.  THAT'S FINE.

22        LET ME GET THE CORRECT PAPERS.

23        ALL RIGHT.  HAS THE SUPERSEDING INFORMATION BEEN FILED?

24             MS. KNIGHT:  YES, YOUR HONOR, IT WAS FILED THIS

25   MORNING AND IT HAS BEEN DOCKETED.
```

1    AND I DID HAND UP A WAIVER OF INDICTMENT FORM FOR EACH

2    DEFENDANT THAT HAS BEEN SIGNED BY THE DEFENDANT AND THEIR

3    COUNSEL.

4         THE COURT:  ALL RIGHT.  LET ME JUST PULL UP THE

5    PAPERS FOR MR. GLOVER FIRST.

6         (PAUSE IN PROCEEDINGS.)

7         THE COURT:  ALL RIGHT.  MR. GLOVER, THE PURPOSE OF

8    COURT TODAY IS TO ADVISE YOU OF YOUR RIGHTS AND TO ADVISE YOU

9    OF THE CRIMINAL CHARGE IN THE SUPERSEDING INFORMATION, AND THEN

10   TO TAKE YOUR PLEA OF GUILTY TO THE INFORMATION.

11        DO YOU HAVE A COPY OF THE SUPERSEDING INFORMATION?

12        THE DEFENDANT:  YES, YOUR HONOR.

13        THE COURT:  OKAY.  ALL RIGHT.  NOW, THERE'S A FULL

14   ARRAIGNMENT ADVISING OF RIGHTS AND ADVISING OF THE CHARGE

15   AND -- DO COUNSEL WAIVE ADVISEMENT OF RIGHTS?  BECAUSE IT SEEMS

16   SILLY OF ME TO ADVISE HIM OF THE RIGHT TO REMAIN SILENT WHEN

17   HE'S GOING TO ENTER A PLEA OF GUILTY TODAY.

18        MR. JACHIMOWICZ:  WE'RE PREPARED TO WAIVE, JUDGE.

19        THE COURT:  OKAY.  ALL RIGHT.

20        AND I'M NOT GOING TO ADVISE OF THE MAXIMUM AND MINIMUM

21   PENALTIES AND THE CHARGES AND THEIR ELEMENTS RIGHT NOW SINCE

22   WE'RE GOING TO DO THAT IN THE CHANGE OF PLEA COLLOQUY.  IS THAT

23   ACCEPTABLE?

24        MR. JACHIMOWICZ:  IT IS, YOUR HONOR.

25        THE COURT:  OKAY.  ALL RIGHT.

```
 1                NOW, MR. GLOVER, DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

 2      TO BE INVESTIGATED BY A GRAND JURY AND CHARGED BY AN INDICTMENT

 3      RETURNED BY THE GRAND JURY AND SIGNED BY A MAGISTRATE JUDGE?

 4                THE DEFENDANT:  YES, YOUR HONOR.

 5                THE COURT:  DO YOU UNDERSTAND THAT BY WAIVING

 6      INDICTMENT, YOU ARE ALLOWING THE GOVERNMENT TO CHARGE YOU

 7      WITHOUT PRESENTING THIS CASE TO A NEUTRAL GRAND JURY?

 8                THE DEFENDANT:  YES, YOUR HONOR.

 9                THE COURT:  OKAY.  IS THIS YOUR SIGNATURE ON THIS

10      WAIVER OF INDICTMENT?

11                THE DEFENDANT:  YES, YOUR HONOR.

12                THE COURT:  DID YOU READ THIS WAIVER OF INDICTMENT?

13                THE DEFENDANT:  YES, YOUR HONOR.

14                THE COURT:  HAVE YOU HAD ENOUGH TIME TO DISCUSS THIS

15      WAIVER OF INDICTMENT WITH YOUR ATTORNEYS?

16                THE DEFENDANT:  YES, YOUR HONOR.

17                THE COURT:  WERE THEY ABLE TO ANSWER YOUR QUESTIONS

18      ABOUT THIS WAIVER?

19                THE DEFENDANT:  YES, YOUR HONOR.

20                THE COURT:  OKAY.  AND YOU UNDERSTAND YOU'VE BEEN

21      ACCUSED OF ONE OR MORE OFFENSES PUNISHABLE BY IMPRISONMENT FOR

22      MORE THAN ONE YEAR?

23                THE DEFENDANT:  YES, YOUR HONOR.

24                THE COURT:  YOU KNOW, THIS SAYS THAT YOU'VE BEEN

25      ADVISED IN OPEN COURT OF YOUR RIGHTS AND THE NATURE OF THE
```

1    PROPOSED CHARGES AGAINST YOU.

2        SO LET ME JUST, FOR PRECAUTION, GO FORWARD WITH YOUR

3    RIGHTS.

4        YOU UNDERSTAND YOU HAVE THE RIGHT TO REMAIN SILENT?  ANY

5    WORDS YOU CAN SAY CAN BE USED AGAINST YOU, AND IF YOU ALREADY

6    SPOKE WITH A GOVERNMENT AGENT, YOU DON'T NEED TO SAY ANYTHING

7    MORE.  AND IF YOU START TO SPEAK, YOU MAY STOP IMMEDIATELY.

8        DO YOU UNDERSTAND THAT?

9        THE DEFENDANT:  YES, YOUR HONOR.

10        THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

11    TO AN ATTORNEY AT EVERY STAGE OF THIS CASE, AND IF YOU CANNOT

12    AFFORD AN ATTORNEY, THE COURT WOULD APPOINT AN ATTORNEY TO

13    REPRESENT YOU AT NO COST TO YOU?

14        THE DEFENDANT:  YES, YOUR HONOR.

15        THE COURT:  IF YOU WOULD LIKE TO SPEAK WITH YOUR

16    ATTORNEY AT ANY TIME DURING THIS PROCEEDING, PLEASE DO SO.

17        DO YOU UNDERSTAND THAT?

18        THE DEFENDANT:  YES, YOUR HONOR.

19        THE COURT:  OKAY.  ARE YOU A UNITED STATES CITIZEN,

20    SIR?

21        THE DEFENDANT:  YES, YOUR HONOR.

22        THE COURT:  OKAY.  AND THE CHARGES AGAINST YOU,

23    THERE'S ACTUALLY ONLY ONE CHARGE IN THE SUPERSEDING

24    INFORMATION, AND THAT CHARGES YOU WITH CONSPIRACY TO VIOLATE

25    18 UNITED STATES CODE, SECTIONS 1030(A)(7)(B) AND (C)(3)(A) IN

1    VIOLATION OF 18 UNITED STATES CODE, SECTION 1030(B), BEGINNING

2    IN APPROXIMATELY OCTOBER OF 2016, AND CONTINUING TO

3    APPROXIMATELY JANUARY OF 2017 IN THE NORTHERN DISTRICT OF

4    CALIFORNIA.

5           DO YOU UNDERSTAND THIS CHARGE?

6                THE DEFENDANT:  YES, YOUR HONOR.

7                THE COURT:  AND DO YOU WAIVE -- I'M GOING TO GO AHEAD

8    AND SIGN THE WAIVER OF INDICTMENT AND PROCEED WITH THE CHANGE

9    OF PLEA.  IS THAT ACCEPTABLE TO DEFENSE COUNSEL?  WE COULD HAVE

10   FURTHER ARRAIGNMENT COLLOQUY, BUT --

11               MR. JACHIMOWICZ:  IT'S ACCEPTABLE, JUDGE.

12               THE COURT:  -- IT SEEMS REPETITIVE.

13               MR. JACHIMOWICZ:  AGREED.

14               THE COURT:  OKAY.

15         (PAUSE IN PROCEEDINGS.)

16               THE COURT:  SO I'VE SIGNED THE WAIVER OF INDICTMENT.

17   I WILL ASK MS. DIBBLE TO FILE THIS.

18   I WILL ALSO ASK MS. DIBBLE TO PLEASE SWEAR IN MR. GLOVER.

19               THE CLERK:  YES, YOUR HONOR.

20   PLEASE RAISE YOUR RIGHT HAND.

21         **(BRANDON GLOVER, DEFENDANT, WAS SWORN.)**

22               THE DEFENDANT:  I DO.

23               THE CLERK:  THANK YOU.

24               THE COURT:  ALL RIGHT.  LET ME ALSO ASK MS. ARLIDGE,

25   DO YOU CONCUR IN MR. GLOVER'S WAIVER OF AN INDICTMENT?

1          MS. ARLIDGE:  YOUR HONOR, I BELIEVE THAT'S MY

2     SIGNATURE ON THE FORM, SO I DO CONCUR.

3          THE COURT:  ALL RIGHT.  THANK YOU.

4          OKAY.  MR. GLOVER, I HAVE SOME QUESTIONS TO ASK YOU.  IF

5     YOU NEED ME TO REPEAT OR EXPLAIN ANYTHING, WOULD YOU PLEASE LET

6     ME KNOW?

7          THE DEFENDANT:  YES, YOUR HONOR.

8          THE COURT:  AND AS I SAID BEFORE, IF YOU NEED TO

9     SPEAK WITH YOUR ATTORNEY BEFORE ANSWERING ANY QUESTION, WOULD

10    YOU PLEASE DO SO?

11         THE DEFENDANT:  YES, YOUR HONOR.

12         THE COURT:  YOU'VE TAKEN THE OATH, WHICH IS A PROMISE

13    TO TELL THE TRUTH.  IF YOU MAKE ANY STATEMENT TODAY THAT'S NOT

14    TRUE, THE GOVERNMENT CAN USE THAT STATEMENT TO PROSECUTE YOU

15    FOR PERJURY.

16         DO YOU UNDERSTAND THAT?

17         THE DEFENDANT:  YES, YOUR HONOR.

18         THE COURT:  WHAT IS YOUR TRUE NAME?

19         THE DEFENDANT:  BRANDON CHARLES GLOVER.

20         THE COURT:  HOW OLD ARE YOU?

21         THE DEFENDANT:  TWENTY-SIX.

22         THE COURT:  WHAT IS THE HIGHEST LEVEL OF SCHOOLING

23    YOU ATTENDED?

24         THE DEFENDANT:  TENTH GRADE.

25         THE COURT:  DID YOU READ YOUR PLEA AGREEMENT?

1          THE DEFENDANT:  YES, YOUR HONOR.

2          THE COURT:  DO YOU UNDERSTAND YOUR PLEA AGREEMENT?

3          THE DEFENDANT:  YES, YOUR HONOR.

4          THE COURT:  HAVE YOU HAD ENOUGH TIME TO DISCUSS YOUR

5    PLEA AGREEMENT WITH YOUR ATTORNEY?

6          THE DEFENDANT:  YES, YOUR HONOR.

7          THE COURT:  HAS YOUR ATTORNEY BEEN ABLE TO ANSWER

8    YOUR QUESTIONS ABOUT YOUR PLEA AGREEMENT?

9          THE DEFENDANT:  YES, YOUR HONOR.

10          THE COURT:  HAVE YOU HAD ENOUGH TIME TO DISCUSS WITH

11    YOUR ATTORNEYS WHETHER YOU SHOULD GO TO TRIAL AND WHAT YOUR

12    DEFENSES MIGHT BE?

13          THE DEFENDANT:  YES, YOUR HONOR.

14          THE COURT:  ARE YOU SATISFIED WITH THE SERVICES THAT

15    YOUR ATTORNEYS HAVE PROVIDED TO YOU?

16          THE DEFENDANT:  YES, YOUR HONOR.

17          THE COURT:  OTHER THAN THE PROMISES CONTAINED IN THE

18    PLEA AGREEMENT, HAS ANYONE ELSE PROMISED YOU ANYTHING IF YOU

19    PLEAD GUILTY TODAY?

20          THE DEFENDANT:  NO, YOUR HONOR.

21          THE COURT:  HAS ANYONE MADE ANY THREATS AGAINST YOU

22    IN ORDER TO GET YOU TO PLEAD GUILTY?

23          THE DEFENDANT:  NO, YOUR HONOR.

24          THE COURT:  IS YOUR DECISION TO PLEAD GUILTY FREE AND

25    VOLUNTARY?

1          THE DEFENDANT:  YES, YOUR HONOR.

2          THE COURT:  HAVE YOU TAKEN ANY DRUG OR MEDICATION

3    THAT AFFECTS YOUR ABILITY TO UNDERSTAND WHAT IS HAPPENING?

4          THE DEFENDANT:  NO, YOUR HONOR.

5          THE COURT:  ALL RIGHT.

6       WOULD YOU PLEASE STATE THE ELEMENTS THAT THE GOVERNMENT

7    WOULD HAVE TO PROVE BEYOND A REASONABLE DOUBT AT TRIAL IN ORDER

8    FOR MR. GLOVER TO BE CONVICTED OF COUNT ONE OF THE SUPERSEDING

9    INFORMATION?

10          MS. KNIGHT:  YES, YOUR HONOR.  THANK YOU.

11       MR. GLOVER HAS BEEN CHARGED WITH CONSPIRACY TO VIOLATE

12   18 UNITED STATES CODE, SECTIONS 1030(A)(7)(B) AND (C)(3)(A),

13   EXTORTION INVOLVING COMPUTERS, IN VIOLATION OF TITLE 18

14   UNITED STATES CODE, SECTION 1030(B).

15       THE ELEMENTS OF THIS OFFENSE ARE AS FOLLOWS:

16       BEGINNING IN APPROXIMATELY OCTOBER OF 2016 AND CONTINUING

17   THROUGH AT LEAST JANUARY 2017, THE DEFENDANT ENTERED INTO AN

18   AGREEMENT WITH ANOTHER INDIVIDUAL TO COMMIT AN OFFENSE UNDER

19   18 UNITED STATES CODE, SECTIONS 1030(A)(7)(B) AND (C)(3)(A),

20   EXTORTION INVOLVING COMPUTERS, IN VIOLATION OF 18 U.S.C.,

21   SECTION 1030(B).

22       THE DEFENDANT BECAME A MEMBER OF THE CONSPIRACY KNOWING OF

23   AT LEAST ONE OF ITS OBJECTS AND INTENDING TO HELP ACCOMPLISH

24   IT.

25       THE ELEMENTS OF 18 UNITED STATES CODE, SECTIONS

1    1030(A)(7)(B) AND (C)(3)(A), EXTORTION INVOLVING COMPUTERS, ARE

2    AS FOLLOWS:

3         THE DEFENDANT ACTED WITH THE INTENT TO EXTORT FROM ANY

4    PERSON ANY MONEY OR ANY OTHER THING OF VALUE; AND BY

5    TRANSMITTING IN INTERSTATE OR FOREIGN COMMERCE A COMMUNICATION

6    CONTAINING A THREAT TO IMPAIR THE CONFIDENTIALITY OF

7    INFORMATION OBTAINED FROM A PROTECTED COMPUTER WITHOUT

8    AUTHORIZATION OR BY EXCEEDING AUTHORIZED ACCESS.

9              THE COURT:  MR. GLOVER, DO YOU UNDERSTAND THE

10   ELEMENTS THE GOVERNMENT WOULD HAVE TO PROVE BEYOND A REASONABLE

11   DOUBT AT TRIAL?

12             THE DEFENDANT:  YES, YOUR HONOR.

13             THE COURT:  WOULD YOU PLEASE STATE THE MAXIMUM

14   PENALTIES PROVIDED BY LAW?

15             MS. KNIGHT:  YES, YOUR HONOR.

16        THE MAXIMUM PENALTIES ARE UP TO FIVE YEARS IN PRISON; A

17   FINE OF $250,000, THAT'S A MAXIMUM FINE; THREE YEARS OF

18   SUPERVISED RELEASE; RESTITUTION THAT IS TO BE DETERMINED BY THE

19   COURT AT A LATER DATE; AND A $100 SPECIAL ASSESSMENT.  THERE'S

20   ALSO FORFEITURE IN THIS MATTER.

21             THE COURT:  OKAY.

22        MR. GLOVER, I SAY THIS TO EVERY SINGLE DEFENDANT.  IF YOU

23   ARE NOT A U.S. CITIZEN, AS A RESULT OF THIS CONVICTION, YOU MAY

24   BE DEPORTED FROM THE UNITED STATES AND SUFFER OTHER IMMIGRATION

25   CONSEQUENCES.

1            DO YOU UNDERSTAND THE MAXIMUM PENALTIES PROVIDED BY LAW?

2               THE DEFENDANT:  YES, YOUR HONOR.

3               THE COURT:  OKAY.  NEXT I'M GOING TO ASK YOU ABOUT

4  RIGHTS THAT YOU HAVE.

5            DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO A JURY TRIAL?

6               THE DEFENDANT:  YES, YOUR HONOR.

7               THE COURT:  DO YOU GIVE UP THAT RIGHT?

8               THE DEFENDANT:  YES, YOUR HONOR.

9               THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

10  TO PLEAD NOT GUILTY AND TO REQUIRE THE GOVERNMENT TO PROVE YOUR

11  GUILT BEYOND A REASONABLE DOUBT AT TRIAL?

12              THE DEFENDANT:  YES, YOUR HONOR.

13              THE COURT:  DO YOU GIVE UP THAT RIGHT?

14              THE DEFENDANT:  YES, YOUR HONOR.

15              THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

16  TO BE REPRESENTED BY A LAWYER AT TRIAL AND AT ALL STAGES OF

17  THESE PROCEEDINGS?

18              THE DEFENDANT:  YES, YOUR HONOR.

19              THE COURT:  DO YOU UNDERSTAND THAT IF YOU COULD NOT

20  AFFORD A LAWYER, THE COURT WOULD APPOINT A LAWYER TO REPRESENT

21  YOU AT NO COST TO YOU?

22              THE DEFENDANT:  YES, YOUR HONOR.

23              THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

24  AT TRIAL TO SEE, HEAR, AND ASK QUESTIONS OF WITNESSES AGAINST

25  YOU?

1          THE DEFENDANT:  YES, YOUR HONOR.

2          THE COURT:  DO YOU GIVE UP THAT RIGHT?

3          THE DEFENDANT:  YES, YOUR HONOR.

4          THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

5     TO TESTIFY AND PRESENT EVIDENCE IN YOUR DEFENSE AT TRIAL?

6          THE DEFENDANT:  YES, YOUR HONOR.

7          THE COURT:  DO YOU GIVE UP THAT RIGHT?

8          THE DEFENDANT:  YES, YOUR HONOR.

9          THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

10     TO REMAIN SILENT, NOT TO TESTIFY, NOT TO PRESENT ANY EVIDENCE

11     OR A DEFENSE?

12          THE DEFENDANT:  YES, YOUR HONOR.

13          THE COURT:  DO YOU GIVE UP THAT RIGHT?

14          THE DEFENDANT:  YES, YOUR HONOR.

15          THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

16     TO CALL WITNESSES TO COME TO TRIAL TO TESTIFY ON YOUR BEHALF

17     AND TO HAVE THE COURT ORDER WITNESSES TO COME TO COURT TO

18     TESTIFY?

19          THE DEFENDANT:  YES, YOUR HONOR.

20          THE COURT:  DO YOU GIVE UP THAT RIGHT?

21          THE DEFENDANT:  YES, YOUR HONOR.

22          THE COURT:  DO YOU UNDERSTAND THAT IF YOU WERE TO GO

23     TO TRIAL AND TO BE CONVICTED, YOU WOULD HAVE THE RIGHT TO

24     APPEAL YOUR CONVICTION, THE JUDGMENT, YOUR SENTENCE, AND ANY

25     ORDERS MADE BY THE COURT?

1          THE DEFENDANT:  YES, YOUR HONOR.

2          THE COURT:  DO YOU UNDERSTAND THAT IN PARAGRAPH 4 OF

3    YOUR PLEA AGREEMENT, YOU HAVE GIVEN UP YOUR RIGHT TO APPEAL

4    YOUR CONVICTION, THE JUDGMENT, ALL ORDERS OF THE COURT, ANY

5    ASPECT OF YOUR SENTENCE, INCLUDING RESTITUTION AND FORFEITURE,

6    BUT YOU HAVE KEPT THE RIGHT TO CLAIM THAT YOUR COUNSEL WAS NOT

7    EFFECTIVE IN REPRESENTING YOU?

8          THE DEFENDANT:  YES, YOUR HONOR.

9          THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

10   TO FILE OTHER TYPES OF MOTIONS OR PETITIONS ATTACKING ORDERS

11   MADE BY THE COURT, YOUR CONVICTION, AND YOUR SENTENCE?

12         THE DEFENDANT:  YES, YOUR HONOR.

13         THE COURT:  DO YOU UNDERSTAND THAT IN PARAGRAPH 5 OF

14   YOUR PLEA AGREEMENT, YOU AGREE NOT TO FILE ANY COLLATERAL

15   ATTACK ON YOUR CONVICTION OR YOUR SENTENCE, INCLUDING A

16   PETITION UNDER 28 UNITED STATES CODE, SECTION 2255 OR 2241, BUT

17   YOU HAVE KEPT THE RIGHT TO CLAIM THAT YOUR LAWYER WAS NOT

18   EFFECTIVE IN REPRESENTING YOU?

19         YOU ALSO AGREE NOT TO SEEK RELIEF UNDER 18 U.S.C.,

20   SECTION 3582.

21         THE DEFENDANT:  YES, YOUR HONOR.

22         THE COURT:  WOULD YOU PLEASE STATE THE GOVERNMENT'S

23   OFFER OF PROOF?

24         MS. KNIGHT:  YES, YOUR HONOR.  THANK YOU.

25         IF THIS CASE WERE TO PROCEED TO TRIAL, THE GOVERNMENT

1    WOULD BE PREPARED TO PROVE BEYOND A REASONABLE DOUBT THE

2    FOLLOWING:

3          FROM APPROXIMATELY OCTOBER 2016 AND CONTINUING THROUGH

4    APPROXIMATELY JANUARY 2017, THE DEFENDANT ENGAGED IN A

5    CONSPIRACY WITH VASILE MEREACRE AND OTHERS TO USE STOLEN

6    CREDENTIALS IN ORDER TO ILLEGALLY OBTAIN CONFIDENTIAL DATABASES

7    AND OTHER DATA BELONGING TO NUMEROUS VICTIM CORPORATIONS FROM

8    THEIR AMAZON WEB SERVICES ACCOUNTS.  SPECIFICALLY, THE

9    DEFENDANT POSSESSED STOLEN USER DATA, AND USED A CUSTOM-BUILT

10   GITHUB ACCOUNT CHECKER TOOL TO DETERMINE IF THE STOLEN DATA WAS

11   ALSO USED AS GITHUB ACCOUNT CREDENTIALS.

12         THE DEFENDANT THEN IDENTIFIED VALID GITHUB ACCOUNT

13   CREDENTIALS FOR CORPORATE EMPLOYEES AND ACCESSED SEVERAL

14   ACCOUNTS BELONGING TO THE EMPLOYEES TO SEARCH FOR AMAZON WEB

15   SERVICES CREDENTIALS.  ONCE HE FOUND THE AMAZON WEB SERVICES

16   CREDENTIALS, HE IMMEDIATELY USED THEM TO ACCESS THE AMAZON WEB

17   SERVICES SIMPLE STORAGE SERVICES, COMMONLY KNOWN AS S3, TO

18   SEARCH FOR AND DOWNLOAD SENSITIVE DATA.

19         THE DEFENDANT POSSESSED AND CONTROLLED THE DATA IN ORDER

20   TO INDUCE PAYMENTS FROM THE VICTIM CORPORATIONS AND KNEW THAT

21   THE VICTIM CORPORATIONS, SEVERAL OF WHOM WERE HEADQUARTERED IN

22   THE NORTHERN DISTRICT OF CALIFORNIA, WOULD SUSTAIN ECONOMIC

23   LOSSES AND DAMAGE TO THEIR REPUTATIONS IF THE DATA WERE TO BE

24   PUBLICLY DISCLOSED.

25         IN ORDER TO INDUCE PAYMENTS, THE DEFENDANTS, MR. GLOVER

1   AND MR. MEREACRE, CONTACTED THE VICTIM CORPORATIONS USING AN

2   ALIAS AND AN ENCRYPTED E-MAIL ACCOUNT, SPECIFICALLY, DEFENDANT

3   MEREACRE USED THE E-MAIL ADDRESS JOHNDOUGHS@PROTONMAIL.COM TO

4   CONTACT THE VICTIM CORPORATIONS TO REPORT A SECURITY

5   VULNERABILITY AND DEMAND PAYMENT IN EXCHANGE FOR DELETION OF

6   THE DATA.

7          THOUGH MR. MEREACRE, DEFENDANT MEREACRE, WAS THE PRIMARY

8   DRAFTER OF THE MESSAGES SENT FROM THE JOHNDOUGHS ACCOUNT, THE

9   DEFENDANT CONSULTED WITH HIM AND HELPED HIM DECIDE WHAT TO SAY.

10         THE DEFENDANT UNDERSTANDS AND AGREES THAT THE E-MAILS TO

11  AND FROM THE JOHNDOUGHS ACCOUNT WERE TRANSMISSIONS IN

12  INTERSTATE COMMERCE.

13         ON ONE OCCASION, DEFENDANTS GLOVER AND MEREACRE INFORMED A

14  VICTIM CORPORATION THAT THEY HAD BEEN PAID BY ANOTHER VICTIM

15  CORPORATION FOR IDENTIFYING SECURITY VULNERABILITIES.

16         THEY ALSO SENT THE VICTIM CORPORATIONS A SAMPLE OF THE

17  DATA IN ORDER FOR THE VICTIM CORPORATIONS TO VERIFY THE

18  AUTHENTICITY OF THE DATA.  AFTER EXAMINING THE SAMPLE DATA, THE

19  VICTIM CORPORATIONS COMMUNICATED WITH THEM ABOUT A PAYMENT IN

20  EXCHANGE FOR DELETION OF THE DATA.  IN SOME INSTANCES, THE

21  VICTIM CORPORATIONS INSTRUCTED THE DEFENDANTS TO REGISTER WITH

22  HACKERONE.  HACKERONE IS A SAN FRANCISCO-BASED COMPANY THAT

23  OPERATES BUG BOUNTY PROGRAMS FOR CORPORATIONS.  BUG BOUNTY

24  PROGRAMS ARE SERVICES WHEREIN INDIVIDUALS REPORT SECURITY

25  VULNERABILITIES AND RECEIVE RECOGNITION AND COMPENSATION.  EACH

1     CORPORATION ESTABLISHES THE RULES AND REGULATIONS OF ITS BUG

2     BOUNTY PROGRAM.

3          IN OTHER INSTANCES, THE VICTIM CORPORATIONS STOPPED

4     COMMUNICATING WITH THE DEFENDANTS AND DID NOT PAY THEM FOR THE

5     DATA.

6          THE DEFENDANTS TARGETED THE FOLLOWING COMPANIES:

7          NUMBER 1.  UBER.  AS PART OF THE CONSPIRACY, ON OR ABOUT

8     NOVEMBER 14, 2016, THE DEFENDANTS E-MAILED THE CHIEF SECURITY

9     OFFICER AT UBER AT THE TIME, USING THE JOHNDOUGHS ACCOUNT.

10    THEY CLAIMED TO HAVE, QUOTE, "FOUND A MAJOR VULNERABILITY IN

11    UBER, 1," OR I, "WAS ABLE TO DUMP UBER DATABASE AND MANY OTHER

12    THINGS," END QUOTE.

13         IN FACT, THE DEFENDANTS HAD NOT DISCOVERED A VULNERABILITY

14    DIRECTLY IN UBER'S SOFTWARE, BUT HAD ILLEGALLY ACCESSED AND

15    DOWNLOADED 57 MILLION RECORDS CONSISTING OF UBER CUSTOMER DATA

16    AND UBER DRIVER DATA FROM AMAZON'S WEB SERVICES ACCOUNT.

17         UBER REPLIED TO THE DEFENDANTS' MESSAGE THE SAME DAY,

18    BEGINNING AN E-MAIL CORRESPONDENCE THAT WOULD EXTEND THROUGH

19    MID-JANUARY OF 2017.

20         ON NOVEMBER 14TH, 2016, THE DEFENDANTS PROVIDED A SNIPPET

21    OF THE DATABASE THAT THEY HAD OBTAINED AS PROOF OF THE DATA

22    EXFILTRATION.  UBER CONFIRMED IT WAS UBER'S DATA.

23         IN RESPONSE, THE DEFENDANTS WROTE, QUOTE, "KEEP IN MIND

24    THIS IS NOT THE ONLY THINGS I FOUND.  I CAN NAME 100 DIFFERENT

25    MORE THINGS I FOUND.  ME AND MY TEAM EXPECT A HIGH COMPENSATION

1    FOR THIS," END QUOTE.

2        WHEN UBER SAID THAT ITS MAXIMUM BOUNTY AMOUNT WAS

3    GENERALLY $10,000, THEY REPLIED, QUOTE, "OUR MINIMUM IS 6

4    DIGITS," END QUOTE.  UBER AGREED, ON OR ABOUT NOVEMBER 16,

5    2016, TO MAKE A $100,000 PAYMENT IN BITCOIN THROUGH THE

6    HACKERONE BUG BOUNTY PROGRAM.

7        THEY REGISTERED ON HACKERONE TO ACCEPT THE PAYMENT, USING

8    THE E-MAIL ADDRESS WILLIAMLOAFMANN@GMAIL.COM.

9        BEFORE MAKING THE PAYMENT, UBER WANTED THE DEFENDANTS TO

10    SIGN A CONFIDENTIALITY AGREEMENT THAT REQUIRED THEM TO DESTROY

11    THE DATA THEY HAD STOLEN.  THE DEFENDANTS INSTRUCTED UBER TO

12    SEND THE PROPOSED AGREEMENT TO BOTH THE JOHNDOUGHS AND

13    SPORTSTICKETS7@GMAIL.COM ACCOUNTS.

14        UBER WANTED THE DEFENDANTS TO SIGN THE CONFIDENTIALITY

15    AGREEMENTS USING THEIR TRUE NAMES, AND FOR APPROXIMATELY THREE

16    WEEKS, THEY NEGOTIATED THAT AND OTHER TERMS.

17        BY DECEMBER 5TH, 2016, THE DEFENDANTS WERE FRUSTRATED AND

18    SENT AN E-MAIL THAT STATED IN RELEVANT PART, QUOTE, "PLEASE

19    KEEP IN MIND, THAT THE CONTRACT STATES ALL DATA WILL BE DELETED

20    ONCE THE MONEY IS PAID.  THE BALL IS IN YOUR COURT," END QUOTE.

21    UBER PAID THE DEFENDANTS THE MONEY IN TWO $50,000 INSTALLMENTS,

22    ONE ON DECEMBER 8TH AND ONE ON DECEMBER 14TH, 2016.

23        BY JANUARY 2017, UBER INFORMED THE DEFENDANTS THAT THEY

24    HAD DISCOVERED THEIR TRUE -- THEY HAD DISCOVERED THEIR TRUE

25    IDENTITIES, INCLUDING, AS IT STATES HERE, MR. GLOVER'S.

1     MR. GLOVER MET WITH A REPRESENTATIVE FROM UBER AT HIS

2     RESIDENCE IN FLORIDA ON JANUARY 3RD, 2017, ADMITTED HIS ROLE IN

3     THE DATE BREACH EXFILTRATION, AND SIGNED A CONFIDENTIALITY

4     AGREEMENT.  THE AGREEMENT REQUIRED THE DEFENDANT TO, AMONG

5     OTHER THINGS, QUOTE, "PROMISE THAT" HE, "THAT I HAVE NOT AND

6     WILL NOT DISCLOSE ANYTHING ABOUT THE VULNERABILITIES OR MY

7     DIALOGUE WITH UBER TO ANYONE FOR ANY PURPOSE WITHOUT UBER'S

8     WRITTEN PERMISSION," END QUOTE, AND, QUOTE, "PROMISE THAT I DID

9     NOT TAKE OR STORE ANY DATA DURING OR THROUGH MY RESEARCH AND

10    THAT I HAVE DELIVERED TO UBER OR FORENSICALLY DESTROYED ALL

11    INFORMATION ABOUT AND/OR ANALYSIS OF THE VULNERABILITIES," END

12    QUOTE.

13        FURTHERMORE, WHILE UBER ULTIMATELY OBTAINED

14    CONFIDENTIALITY AGREEMENTS FROM MR. GLOVER AND MR. MEREACRE,

15    NEITHER MR. MEREACRE OR MR. GLOVER EVER DISCLOSED TO UBER THAT

16    A THIRD INDIVIDUAL, REFERRED TO AS INDIVIDUAL ONE, WAS INVOLVED

17    IN THE UBER DATA BREACH.  MEREACRE SHARED UBER'S AMAZON WEB

18    SERVICES CREDENTIALS WITH INDIVIDUAL ONE, WHICH ALLOWED HIM TO

19    ACCESS UBER'S AMAZON WEB SERVICES ACCOUNT.  INDIVIDUAL ONE IS A

20    TECHNICALLY PROFICIENT HACKER, AND HE WAS RESPONSIBLE FOR

21    IDENTIFYING THE SPECIFIC ARCHIVE FILE THAT CONTAINED THE

22    57 MILLION USER RECORDS.

23        MEREACRE AND GLOVER, THE DEFENDANTS, AGREED TO SPLIT THE

24    $100,000 PAYMENT WITH INDIVIDUAL ONE IN LIGHT OF HIS

25    CONTRIBUTION.

1    IN THE COURSE OF HIS PARTICIPATION, INDIVIDUAL ONE

2  OBTAINED A COPY OF THE ARCHIVE FILE CONTAINING UBER'S USER

3  RECORDS.  THE DEFENDANTS REQUESTED THAT INDIVIDUAL ONE DELETE

4  HIS COPY, WHICH HE SAID HE WOULD DO, BUT THE DEFENDANT CANNOT

5  BE CERTAIN THAT HE DID SO.

6    THE SECOND CORPORATION AFFECTED IS LYNDA.COM.

7    AS PART OF THE CONSPIRACY, ON DECEMBER 11TH, 2016, THE

8  DEFENDANTS E-MAILED THE SECURITY TEAM AT LINKEDIN USING THE

9  JOHNDOUGHS ACCOUNT TO NOTIFY THE COMPANY, WHICH OWNS LYNDA.COM,

10  THAT THEY FOUND A SECURITY FLAW COMPROMISING -- COMPROMISING

11  DATABASES OF LYNDA.COM, ALONG WITH CREDIT CARD PAYMENTS AND

12  MUCH MORE.

13    THE DEFENDANTS WERE WELL AWARE THAT THERE WAS NOT A

14  SECURITY FLAW AND THAT, IN FACT, THEY POSSESSED OVER 90,000

15  CONFIDENTIAL LYNDA.COM USER ACCOUNTS THAT WERE ILLEGALLY

16  ACCESSED AND DOWNLOADED FROM LYNDA.COM'S AMAZON WEB SERVICES

17  ACCOUNT.

18    A FEW HOURS LATER, A MEMBER OF LINKEDIN'S SECURITY TEAM

19  RESPONDED TO THE DEFENDANTS FOR AN EXPLANATION OF THE ALLEGED

20  VULNERABILITY.  THE DEFENDANTS RESPONDED WITH THE FOLLOWING

21  E-MAIL AND ATTACHED A SAMPLE OF THE DATA:  QUOTE, "BEFORE I

22  CONTINUE, I WOULD LIKE TO SAY THAT THIS DOES NOT LOOK GOOD, I

23  WAS ABLE TO ACCESS BACKUPS UPON BACKUPS, ME AND MY TEAM WOULD

24  LIKE A HUGE REWARD FOR THIS.  THE THINGS WE FOUND WERE SOME OF

25  THE FOLLOWING, LYNDA DATABASE, E-MAIL NAMES ADDRESSES,

1 USERNAMES, SOME PASSWORDS, PAYMENTS, WE ALSO FOUND BACKEND CODE

2 AND MANY MORE. WE ALSO FOUND PARTIAN LINKEDIN FILES. BEFORE I

3 CONTINUE, I WOULD LIKE TO ASK THAT YOU GUYS WILL PROMISE TO

4 COMPENSATE FOR THIS FIND."

5 THE SECURITY TEAM MEMBER AND THE JOHNDOUGHS ACCOUNT

6 CONTINUED TO COMMUNICATE ABOUT THE LYNDA.COM DATABASE, AND THE

7 LINKEDIN EXECUTIVE INVITED THE JOHNDOUGHS ACCOUNT TO JOIN

8 LINKEDIN'S BUG BOUNTY PROGRAM THROUGH HACKERONE.

9 AFTER THE INVITATION TO JOIN HACKERONE WAS EXTENDED, THE

10 DEFENDANTS E-MAILED THE SECURITY TEAM MEMBER USING THE

11 JOHNDOUGHS ACCOUNT TO INFORM HIM THAT, QUOTE, "PLEASE KEEP IN

12 MIND, WE EXPECT A BIG PAYMENT AS THIS WAS HARD WORK FOR US, WE

13 ALREADY HELPED A BIG CORP WHICH PAID CLOSE TO 7 DIGITS, ALL

14 WENT WELL," END QUOTE.

15 THE DEFENDANTS THEN ESTABLISHED AN ACCOUNT WITH HACKERONE

16 USING THE FALSE NAME WILLIAM LOAFMANN AND PROVIDED FALSE

17 INFORMATION ON THE FORMS, AND CONTINUED TO COMMUNICATE WITH

18 LINKEDIN USING THE HACKERONE COMMUNICATION PLATFORM.

19 THE DEFENDANTS STOPPED COMMUNICATING WITH LINKEDIN ON

20 APPROXIMATELY JANUARY 16, 2017. THE COMPANY DID NOT PAY THE

21 DEFENDANTS FOR THE DATA OR FOR CONFIDENTIALITY.

22 THE COURT: MR. GLOVER, DID YOU HEAR AND UNDERSTAND

23 THE FACTS THE GOVERNMENT IS PREPARED TO PROVE?

24 THE DEFENDANT: YES, YOUR HONOR.

25 THE COURT: ARE THOSE FACTS TRUE AND CORRECT?

1          THE DEFENDANT:  YES, YOUR HONOR.

2          THE COURT:  WHAT IS YOUR PLEA TO THE SUPERSEDING

3    INFORMATION WHICH ALLEGES THAT BEGINNING IN APPROXIMATELY

4    OCTOBER 2016 AND CONTINUING TO APPROXIMATELY JANUARY 2017, IN

5    THE NORTHERN DISTRICT OF CALIFORNIA AND ELSEWHERE, YOU

6    CONSPIRED TO VIOLATE 18 U.S. CODE, SECTIONS 1030(A)(7)(B) AND

7    (C)(3)(A), IN VIOLATION OF 18 U.S. CODE, SECTION 1030(B)?

8          THE DEFENDANT:  GUILTY, YOUR HONOR.

9          THE COURT:  LET ME ASK COUNSEL, MR. JACHIMOWICZ AND

10   MS. ARLIDGE, IF YOU CONCUR IN MR. GLOVER'S WAIVER OF RIGHTS AND

11   ENTRY OF A GUILTY PLEA TO THE SUPERSEDING INFORMATION?

12         MS. ARLIDGE:  YOUR HONOR, YES.

13       BUT THERE'S ONE ISSUE THAT I'D LIKE TO JUST PUT ON THE

14   RECORD, THAT WITH RESPECT -- THE PLEA AGREEMENT TALKS ABOUT

15   FORFEITURE, WHICH IS AN ELEMENT -- AN ASPECT THAT MR. GLOVER

16   HAS AGREED TO.

17       WE HAVE AN AGREEMENT WITH THE GOVERNMENT THAT THE MONEY

18   FORFEITED CAN BE APPLIED, OR WILL BE APPLIED TO RESTITUTION

19   FIRST.

20         THE COURT:  HAS HE ALREADY FORFEITED THE 50,000?

21         MS. KNIGHT:  NOT YET, YOUR HONOR.

22         THE COURT:  OKAY.  ARE YOU JUST PLACING THAT ON THE

23   RECORD?  OR IS THERE ANYTHING YOU'RE REQUESTING FROM ME?

24         MS. ARLIDGE:  NO, I'M JUST -- IT WASN'T IN WRITING.

25         THE COURT:  OH.

1          MS. ARLIDGE:  AND I JUST WANTED TO HAVE THAT -- LET

2     THE COURT KNOW THAT WE HAVE THE AGREEMENT THAT THE MONEY WOULD

3     BE APPLIED TOWARD RESTITUTION FIRST.

4          THE COURT:  OKAY.  AND MY UNDERSTANDING IS THAT THAT

5     MONEY DOES GO TO RESTITUTION FIRST GENERALLY.  IS THAT CORRECT?

6          MS. KNIGHT:  YOUR HONOR, I BELIEVE IT MIGHT.

7          BUT WE ARE AGREEING TO IT, AND THE FORFEITURE OF $50,000

8     WILL BE APPLIED TO ANY -- TO THE RESTITUTION ORDER IF THERE IS

9     ONE.

10          THE COURT:  ALL RIGHT.  YOU DO CONCUR IN THE WAIVER

11     OF RIGHTS AND ENTRY OF GUILTY PLEA TO THE SUPERSEDING

12     INFORMATION; CORRECT?

13          MS. ARLIDGE:  I DO, YOUR HONOR, YES.

14          MR. JACHIMOWICZ:  YES, I DO.

15          THE COURT:  ALL RIGHT.  THE COURT ACCEPTS THE PLEA

16     AND FINDS THAT MR. GLOVER HAS MADE A KNOWING, INTELLIGENT, FREE

17     AND VOLUNTARY WAIVER OF RIGHTS AND ENTRY OF A GUILTY PLEA TO

18     THE SUPERSEDING INFORMATION.  THERE IS AN INDEPENDENT FACTUAL

19     BASIS FOR EACH ELEMENT OF THE OFFENSE.

20          I AM REFERRING THIS MATTER TO THE UNITED STATES PROBATION

21     OFFICE FOR A PREPARATION -- FOR A PRESENTENCE REPORT.

22          WHEN WOULD YOU LIKE THE SENTENCING?

23          MS. ARLIDGE:  YOUR HONOR, WE'D LIKE TO DELAY THE

24     REFERRAL AND ASK FOR A STATUS DATE, AND WE WERE LOOKING AT

25     MARCH OR APRIL IF THAT'S AGREEABLE WITH THE COURT.

1          THE COURT:  THAT'S FINE.  DID YOU HAVE A SPECIFIC

2   DATE IN MIND?

3          MS. KNIGHT:  WE DON'T HAVE A SPECIFIC DATE.  WHAT

4   WORKS FOR --

5          MS. ARLIDGE:  ANY DATE, YOUR HONOR, THAT THE COURT

6   FINDS AVAILABLE.

7          THE CLERK:  YOU SAID MARCH OR APRIL?

8          MS. ARLIDGE:  YES.

9          THE CLERK:  I DON'T KNOW THAT WE HAVE A LOT OF

10  AVAILABILITY.

11         MS. KNIGHT:  YOUR HONOR, COULD WE HAVE, IF POSSIBLE,

12  MARCH 25TH?  MS. ROONEY AND I MIGHT BE IN TRIAL BEFORE

13  JUDGE FREEMAN IN MARCH.  IF THAT'S ACCEPTABLE?

14         MS. ARLIDGE:  THAT'S FINE, YOUR HONOR.

15         THE CLERK:  YOUR HONOR MIGHT NOT BE AVAILABLE

16  MARCH 25TH.

17         MS. KNIGHT:  OH, OKAY.

18         MS. ARLIDGE:  WE HAD A PRETRIAL CONFERENCE SET ON

19  THAT DATE.

20         THE COURT:  MARCH 25TH IS THE PRETRIAL CONFERENCE.

21  IS THAT THE DATE YOU'D LIKE TO KEEP?

22         MS. ARLIDGE:  THAT WOULD BE FINE IF THAT WORKS FOR

23  YOU.

24         THE COURT:  WAIT.  BUT YOU'RE SAYING -- I'M SORRY, I

25  WASN'T -- I'M TRYING TO WRITE MY NOTES, SO I COULDN'T KEEP UP

1     WITH EVERYTHING.

2          WHEN IS THE CONFLICT POTENTIALLY?

3               THE CLERK:  THAT DAY, ON THE 25TH.

4               THE COURT:  OH, OKAY.

5               MS. KNIGHT:  MAYBE MARCH 18TH IF THE COURT'S

6     AVAILABLE.

7               THE CLERK:  THAT WORKS FOR THE COURT.

8               THE COURT:  OKAY.  SO MARCH 18TH, 2020, AT 9:15.

9               MS. ARLIDGE:  FOR STATUS.

10              THE COURT:  I'M SORRY?

11              MS. ARLIDGE:  FOR STATUS.

12              THE COURT:  YEAH, FOR STATUS ONLY.  I'M NOT MAKING A

13    REFERRAL TO PROBATION.

14         I AM VACATING THE MAY 1ST TRIAL DATE AND THE MARCH 25TH

15    PRETRIAL CONFERENCE DATE AND ALL OF THE MARCH FILING DEADLINES

16    AS TO MR. GLOVER.

17              MS. ARLIDGE:  YOUR HONOR, WITH RESPECT TO THAT DATE,

18    MR. GLOVER RESIDES IN FLORIDA.  WE HAVE USED THE COURT CALL IN

19    THE PAST.  WE'D LIKE THE COURT'S PERMISSION TO HAVE MR. GLOVER

20    APPEAR TELEPHONICALLY ON THAT DATE.

21              THE COURT:  YOU NEED TO FOLLOW OUR PROCEDURE, WHICH

22    IS YOU FILE A REQUEST SEVEN DAYS IN ADVANCE.

23              MS. ARLIDGE:  WE'LL DO.

24              MR. JACHIMOWICZ:  THANK YOU.

25              THE COURT:  ALL RIGHT.  ANYTHING MORE FOR MR. GLOVER

1    TODAY?

2              MS. KNIGHT:  NO, YOUR HONOR.  THANK YOU.

3              THE COURT:  NO?  OKAY.  THANK YOU.

4              MR. JACHIMOWICZ:  THANK YOU.

5              THE COURT:  ALL RIGHT.  WE'LL SEE YOU LATER, SIR, IN

6    2020.

7         (THE PROCEEDINGS WERE CONCLUDED AT 10:23 A.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2

3                    CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____

     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18          DATED:  NOVEMBER 12, 2019

19

20

21

22

23

24

25