```
1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION

4

5    UNITED STATES OF AMERICA,      )  CR-18-00348 LHK
                                    )
6                    PLAINTIFF,     )  SAN JOSE, CALIFORNIA
                                    )
7              VS.                  )  OCTOBER 30, 2019
                                    )
8    VASILE MEREACRE,               )  PAGES 1-21
                                    )
9                    DEFENDANT.     )
     _____)

10

11              TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE LUCY H. KOH
12             UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15   FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                           BY:  SUSAN KNIGHT
16                              AMIE D. ROONEY
                           150 ALMADEN BOULEVARD, SUITE 900
17                         SAN JOSE, CALIFORNIA  95113

18   FOR THE DEFENDANT:    LAW OFFICES OF DORON WEINBERG
                           BY:  DORON WEINBERG
19                         523 OCTAVIA STREET
                           SAN FRANCISCO, CALIFORNIA  94102

20

21

22

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1    SAN JOSE, CALIFORNIA                    OCTOBER 30, 2019

 2                        P R O C E E D I N G S

 3         (COURT CONVENED AT 10:23 A.M.)

 4              THE COURT:  ALL RIGHT.  LET'S DO THE NEXT ONE.

 5              THE CLERK:  YES, YOUR HONOR.  CALLING CASE 18-348,

 6    UNITED STATES VERSUS VASILE MEREACRE.

 7              MS. ROONEY:  AMIE ROONEY AND SUSAN KNIGHT FOR THE

 8    UNITED STATES, YOUR HONOR.

 9              THE DEFENDANT:  GOOD MORNING, YOUR HONOR.

10              MR. WEINBERG:  GOOD MORNING, YOUR HONOR.

11         DORON WEINBERG APPEARING WITH MR. MEREACRE.

12              THE COURT:  OKAY.  GOOD MORNING AND WELCOME.

13         AND I APOLOGIZE, BECAUSE YOU TOLD ME BEFORE, BUT I WANT TO

14    MAKE SURE I PRONOUNCE YOUR LAST NAME CORRECTLY.  MEREACRE?

15              THE DEFENDANT:  CLOSE.  MEREACRE.

16              THE COURT:  MEREACRE.

17              MR. WEINBERG:  MEREACRE.

18              THE COURT:  MEREACRE?

19              THE DEFENDANT:  YEAH.

20              THE COURT:  ALL RIGHT.  LET'S DO THE ARRAIGNMENT

21     FIRST.

22         OKAY.  THE PURPOSE OF THE HEARING TODAY IS TO ARRAIGN YOU

23    ON A SUPERSEDING INFORMATION, GET YOUR WAIVER OF INDICTMENT,

24    AND HAVE A CHANGE OF PLEA COLLOQUY.  OR ACTUALLY, YOU HAVEN'T

25    ENTERED A PLEA YET TO THE SUPERSEDING INFORMATION, SO IT WOULD
```

1    BE TO TAKE YOUR GUILTY PLEA TO THE SUPERSEDING INFORMATION.

2           DO YOU HAVE A COPY OF THE SUPERSEDING INFORMATION?

3               THE DEFENDANT:  YES, YOUR HONOR.

4               THE COURT:  OKAY.  DO YOU WAIVE ADVISEMENT OF RIGHTS

5    AND ADVISEMENT OF THE CHARGE?

6               MR. WEINBERG:  SO WAIVED.

7               THE COURT:  OKAY.  ALL RIGHT.

8         MR. MEREACRE, DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO

9    BE INVESTIGATED BY A GRAND JURY AND TO HAVE A GRAND JURY MAKE A

10   DETERMINATION OF WHETHER THE GOVERNMENT HAS PROVED ITS

11   CHARGES -- HAS MADE A PROBABLE CAUSE SHOWING AS TO THE CHARGES

12   IN THE FORM OF AN INDICTMENT THAT GETS RETURNED BY THE GRAND

13   JURY AND SIGNED BY A MAGISTRATE JUDGE?

14              THE DEFENDANT:  YES, YOUR HONOR.

15              THE COURT:  DO YOU UNDERSTAND THAT BY WAIVING

16   INDICTMENT, YOU ARE ALLOWING THE GOVERNMENT TO CHARGE YOU

17   WITHOUT PRESENTING ITS CASE TO A NEUTRAL GRAND JURY?

18              THE DEFENDANT:  YES, YOUR HONOR.

19              THE COURT:  OKAY.  DO YOU UNDERSTAND YOU'VE BEEN

20   ACCUSED OF AN OFFENSE PUNISHABLE BY IMPRISONMENT FOR MORE THAN

21   ONE YEAR IN THE SUPERSEDING INFORMATION?

22              THE DEFENDANT:  YES, YOUR HONOR.

23              THE COURT:  OKAY.  AND DO YOU WAIVE YOUR RIGHT TO

24   PROSECUTION BY INDICTMENT AND CONSENT TO PROSECUTION BY

25   INFORMATION?

1              THE DEFENDANT:  I DO, YES.

2              THE COURT:  IS THIS YOUR SIGNATURE ON THE WAIVER OF

3    INDICTMENT?

4              THE DEFENDANT:  IT IS.

5              THE COURT:  OKAY.  AND, MR. WEINBERG, DO YOU CONCUR

6    IN MR. MEREACRE'S WAIVER OF INDICTMENT?

7              MR. WEINBERG:  I DO, YOUR HONOR.

8              THE COURT:  ALL RIGHT.  I'M GOING TO SIGN THIS WAIVER

9    OF INDICTMENT FORM AND ASK MS. DIBBLE TO PLEASE FILE IT AFTER

10   TODAY'S PROCEEDINGS.

11        WOULD YOU PLEASE ALSO SWEAR IN MR. MEREACRE?

12        IS THAT CORRECT?

13             THE CLERK:  YES, YOUR HONOR.

14        **(VASILE MEREACRE, DEFENDANT, WAS SWORN.)**

15             THE DEFENDANT:  I SWEAR.

16             THE CLERK:  THANK YOU.

17             THE COURT:  WOULD YOU PRONOUNCE YOUR LAST NAME ONE

18   MORE TIME?  MEREACRE?

19             THE DEFENDANT:  MEREACRE.

20             MR. WEINBERG:  MEREACRE.  THERE'S AN "E" BEFORE THE

21   "A," MEREACRE.

22             THE COURT:  MEREACRE.

23             THE DEFENDANT:  CLOSE.

24             THE COURT:  IS THAT -- NO?

25             THE DEFENDANT:  IT'S OKAY.

1       THE COURT:  OKAY.  DO YOU UNDERSTAND THAT I HAVE

2  QUESTIONS TO ASK YOU, AND IF YOU NEED ME TO REPEAT OR EXPLAIN

3  ANYTHING, WOULD YOU PLEASE DO SO?

4       THE DEFENDANT:  YES, YOUR HONOR.

5       THE COURT:  IF YOU NEED TO SPEAK WITH YOUR ATTORNEY

6  AT ANY POINT, WOULD YOU PLEASE DO SO?

7       THE DEFENDANT:  YES, YOUR HONOR.

8       THE COURT:  YOU HAVE TAKEN THE OATH, WHICH IS A

9  PROMISE TO TELL THE TRUTH.  IF YOU SAY ANYTHING THAT IS NOT

10  TRUE, THE GOVERNMENT CAN USE YOUR UNTRUE STATEMENT TO PROSECUTE

11  YOU FOR PERJURY.

12     DO YOU UNDERSTAND THAT?

13       THE DEFENDANT:  I DO, YES.

14       THE COURT:  WHAT IS YOUR TRUE NAME?

15       THE DEFENDANT:  VASILE MEREACRE.

16       THE COURT:  HOW OLD ARE YOU?

17       THE DEFENDANT:  TWENTY-TWO.

18       THE COURT:  WHAT IS THE HIGHEST LEVEL OF SCHOOLING

19  YOU ATTENDED?

20       THE DEFENDANT:  UNIVERSITY.

21       THE COURT:  DID YOU READ YOUR PLEA AGREEMENT?

22       THE DEFENDANT:  I DID, YES.

23       THE COURT:  DO YOU UNDERSTAND YOUR PLEA AGREEMENT?

24       THE DEFENDANT:  I DO, YOUR HONOR.

25       THE COURT:  HAVE YOU HAD ENOUGH TIME TO DISCUSS YOUR

1    PLEA AGREEMENT WITH YOUR ATTORNEY?

2          THE DEFENDANT:  I HAVE, YOUR HONOR.

3          THE COURT:  AND HAVE YOU HAD ENOUGH TIME TO DISCUSS

4    WITH YOUR ATTORNEY WHETHER YOU SHOULD GO TO TRIAL AND WHAT YOUR

5    DEFENSES AT TRIAL MIGHT BE?

6          THE DEFENDANT:  I DID, YOUR HONOR, YES.

7          THE COURT:  OKAY.  ARE YOU SATISFIED WITH THE

8    SERVICES YOUR ATTORNEY HAS PROVIDED TO YOU?

9          THE DEFENDANT:  I AM, YOUR HONOR.

10          THE COURT:  OTHER THAN THE PROMISES CONTAINED IN THE

11    PLEA AGREEMENT, HAS ANYONE ELSE PROMISED YOU ANYTHING IF YOU

12    PLEAD GUILTY TODAY?

13          THE DEFENDANT:  NO, YOUR HONOR.

14          THE COURT:  HAVE YOU MADE -- HAS ANYONE MADE ANY

15    THREATS AGAINST YOU IN ORDER TO GET YOU TO PLEAD GUILTY?

16          THE DEFENDANT:  NO, YOUR HONOR.

17          THE COURT:  IS YOUR DECISION TO PLEAD GUILTY FREE AND

18    VOLUNTARY?

19          THE DEFENDANT:  YES, IT IS, YOUR HONOR.

20          THE COURT:  HAVE YOU TAKEN ANY DRUG OR MEDICATION

21    THAT AFFECTS YOUR ABILITY TO THINK CLEARLY, UNDERSTAND WHAT IS

22    HAPPENING, AND MAKE DECISIONS?

23          THE DEFENDANT:  NO, I HAVEN'T, YOUR HONOR.

24          THE COURT:  WOULD YOU PLEASE STATE THE ELEMENTS THAT

25    THE GOVERNMENT WOULD HAVE TO PROVE BEYOND A REASONABLE DOUBT AT

1    TRIAL IN ORDER FOR MR. MEREACRE TO BE CONVICTED OF COUNT ONE OF

2    THE SUPERSEDING INFORMATION?

3             MS. ROONEY:  YES, YOUR HONOR.

4         THE ELEMENTS THAT THE GOVERNMENT WOULD HAVE TO PROVE AT

5    TRIAL ARE THAT, AND FOR -- TO PROVE A VIOLATION OF 18 U.S.C.,

6    SECTION 1030(B) AND 1030(A)(7)(B) AND (C)(3)(A) IS THAT

7    BEGINNING IN APPROXIMATELY OCTOBER OF 2016 AND CONTINUING

8    THROUGH AT LEAST JANUARY 2017, THE DEFENDANT ENTERED INTO AN

9    AGREEMENT WITH ANOTHER INDIVIDUAL TO COMMIT AN OFFENSE UNDER

10   18 UNITED STATES CODE, SECTION 1030(A)(7)(B) AND (C)(3)(A),

11   EXTORTION INVOLVING COMPUTERS, IN VIOLATION OF 18 U.S.C.,

12   SECTION 1030(B); AND, SECOND, THAT HE BECAME A MEMBER OF THAT

13   CONSPIRACY KNOWING OF AT LEAST ONE OF ITS OBJECTS AND INTENDING

14   TO HELP ACCOMPLISH IT.

15        HE AGREES FURTHER THAT THE ELEMENTS THE GOVERNMENT WOULD

16   HAVE TO PROVE UNDER 18 UNITED STATES CODE, SECTION

17   1030(A)(7)(B) AND (C)(3)(A), EXTORTION INVOLVING COMPUTERS, ARE

18   THAT THE DEFENDANT ACTED WITH INTENT TO EXTORT FROM ANY PERSON

19   ANY MONEY OR ANY OTHER THING OF VALUE; AND THAT, TWO, THE

20   GOVERNMENT COULD PROVE THAT BY TRANSMITTING IN INTERSTATE OR

21   FOREIGN COMMERCE A COMMUNICATION CONTAINING A THREAT TO IMPAIR

22   THE CONFIDENTIALITY OF INFORMATION OBTAINED FROM A PROTECTED

23   COMPUTER WITHOUT AUTHORIZATION OR BY EXCEEDING AUTHORIZED

24   ACCESS.

25             THE COURT:  DO YOU UNDERSTAND EACH OF THE ELEMENTS

1    THE GOVERNMENT WOULD HAVE TO PROVE BEYOND A REASONABLE DOUBT AT

2    TRIAL?

3              THE DEFENDANT:  YES, I DO, YOUR HONOR.

4              THE COURT:  WOULD YOU PLEASE STATE THE MAXIMUM

5    PENALTIES PROVIDED BY LAW?

6              MS. ROONEY:  THE MAXIMUM PENALTIES THAT THE DEFENDANT

7    FACES ARE A MAXIMUM PRISON TERM OF FIVE YEARS; A MAXIMUM FINE

8    OF $250,000; A MAXIMUM SUPERVISED RELEASE TERM OF UP TO THREE

9    YEARS; RESTITUTION TO BE DETERMINED BY THE COURT; A MANDATORY

10   SPECIAL ASSESSMENT OF $100; POTENTIAL DEPORTATION; AND

11   FORFEITURE OF PROCEEDS.

12             THE COURT:  I SAY THIS TO EVERY DEFENDANT.  IF YOU

13   ARE NOT A U.S. CITIZEN, YOUR CONVICTION IN THIS CASE MAY RESULT

14   IN YOUR POTENTIAL DEPORTATION AND OTHER IMMIGRATION

15   CONSEQUENCES.

16        DO YOU UNDERSTAND THE MAXIMUM PENALTIES PROVIDED BY LAW?

17             THE DEFENDANT:  YES, I DO, YOUR HONOR.

18             THE COURT:  OKAY.  I'M GOING TO ASK YOU ABOUT RIGHTS

19   THAT YOU HAVE TO MAKE SURE THAT YOU UNDERSTAND YOUR RIGHTS AND

20   THAT YOU'RE FREELY GIVING THEM UP.

21        DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO A JURY TRIAL?

22             THE DEFENDANT:  YES, YOUR HONOR.

23             THE COURT:  DO YOU GIVE UP THAT RIGHT?

24             THE DEFENDANT:  YES, YOUR HONOR.

25             THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

1     TO PLEAD NOT GUILTY AND TO REQUIRE THE GOVERNMENT TO PROVE YOUR

2     GUILT BEYOND A REASONABLE DOUBT AT A TRIAL?

3              THE DEFENDANT:  YES, YOUR HONOR.

4              THE COURT:  DO YOU GIVE UP THAT RIGHT?

5              THE DEFENDANT:  I DO, YES, YOUR HONOR.

6              THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

7     TO BE REPRESENTED BY A LAWYER AT TRIAL AND AT ALL STAGES OF

8     THESE CRIMINAL PROCEEDINGS?

9              THE DEFENDANT:  YES, YOUR HONOR.

10             THE COURT:  DO YOU UNDERSTAND THAT IF YOU COULD NOT

11    AFFORD A LAWYER, THE COURT WOULD APPOINT A LAWYER TO REPRESENT

12    YOU AT NO COST TO YOU?

13             THE DEFENDANT:  YES, YOUR HONOR.

14             THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

15    TO SEE, HEAR, AND ASK QUESTIONS OF WITNESSES WHO TESTIFY

16    AGAINST YOU AT TRIAL?

17             THE DEFENDANT:  YES, YOUR HONOR.

18             THE COURT:  DO YOU GIVE UP THAT RIGHT?

19             THE DEFENDANT:  I DO, YES, YOUR HONOR.

20             THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

21    TO TESTIFY AND TO PRESENT EVIDENCE AND A DEFENSE AT YOUR TRIAL?

22             THE DEFENDANT:  YES, YOUR HONOR.

23             THE COURT:  DO YOU GIVE UP THAT RIGHT?

24             THE DEFENDANT:  I DO, YOUR HONOR.

25             THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

1  TO REMAIN SILENT, NOT TO TESTIFY, NOT TO PRESENT ANY EVIDENCE

2  OR A DEFENSE?

3  THE DEFENDANT:  YES, YOUR HONOR.

4  THE COURT:  DO YOU GIVE UP THAT RIGHT?

5  THE DEFENDANT:  I DO.

6  THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

7  TO CALL WITNESSES TO COME TO TRIAL TO TESTIFY ON YOUR BEHALF

8  AND TO HAVE THE COURT ORDER WITNESSES TO COME TO COURT TO

9  TESTIFY?

10  THE DEFENDANT:  YES, YOUR HONOR.

11  THE COURT:  DO YOU GIVE UP THAT RIGHT?

12  THE DEFENDANT:  I DO.

13  THE COURT:  DO YOU UNDERSTAND THAT IF YOU WERE TO GO

14  TO TRIAL AND TO BE CONVICTED, YOU WOULD HAVE THE RIGHT TO

15  APPEAL YOUR CONVICTION, THE JUDGMENT, YOUR SENTENCE, AND ORDERS

16  MADE BY THE COURT?

17  THE DEFENDANT:  YES, YOUR HONOR.

18  THE COURT:  DO YOU UNDERSTAND THAT IN PARAGRAPH 4,

19  YOU'VE GIVEN UP YOUR RIGHT TO APPEAL YOUR CONVICTION, THE

20  JUDGMENT, ORDERS OF THE COURT, ANY ASPECT OF YOUR SENTENCE,

21  INCLUDING FORFEITURE AND RESTITUTION?

22  THE DEFENDANT:  YES, YOUR HONOR.

23  THE COURT:  BUT YOU HAVE KEPT THE RIGHT TO CLAIM THAT

24  YOUR LAWYER WAS NOT EFFECTIVE IN REPRESENTING YOU.

25  THE DEFENDANT:  YES, YOUR HONOR.

1    THE COURT:  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT

2    TO FILE OTHER TYPES OF MOTIONS OR PETITIONS ATTACKING ORDERS

3    MADE BY THE COURT, YOUR CONVICTION, AND YOUR SENTENCE?

4    THE DEFENDANT:  YES, YOUR HONOR.

5    THE COURT:  DO YOU UNDERSTAND THAT IN PARAGRAPH 5 OF

6    YOUR PLEA AGREEMENT, YOU AGREE NOT TO FILE ANY COLLATERAL

7    ATTACK ON YOUR CONVICTION OR YOUR SENTENCE, INCLUDING A

8    PETITION UNDER 28 U.S.C., SECTION 2255 OR 4241?

9    BUT YOU HAVE KEPT THE RIGHT TO CLAIM THAT YOUR LAWYER WAS

10   NOT EFFECTIVE IN REPRESENTING YOU.

11   YOU ALSO AGREE NOT TO SEEK RELIEF UNDER 18 U.S.C.,

12   SECTION 3582.

13   THE DEFENDANT:  YES, YOUR HONOR.

14   THE COURT:  WOULD YOU PLEASE STATE THE GOVERNMENT'S

15   OFFER OF PROOF?

16   MS. ROONEY:  YES, YOUR HONOR.

17   IF THE CASE WERE TO PROCEED TO TRIAL, THE GOVERNMENT WOULD

18   BE PREPARED TO PROVE BEYOND A REASONABLE DOUBT THE FOLLOWING

19   FACTS:

20   FROM APPROXIMATELY OCTOBER 2016 AND CONTINUING THROUGH

21   APPROXIMATELY JANUARY 2017, THIS DEFENDANT ENGAGED IN A

22   CONSPIRACY WITH BRANDON GLOVER AND OTHERS TO USE STOLEN

23   CREDENTIALS IN ORDER TO ILLEGALLY OBTAIN CONFIDENTIAL DATABASES

24   AND OTHER DATA BELONGING TO NUMEROUS VICTIM CORPORATIONS FROM

25   THEIR AMAZON WEB SERVICES ACCOUNTS.  SPECIFICALLY, THIS

1   DEFENDANT POSSESSED STOLEN USER DATA, AND USED A CUSTOM-BUILT

2   GITHUB ACCOUNT CHECKER TOOL TO DETERMINE IF THE STOLEN DATA WAS

3   ALSO USED AS GITHUB ACCOUNT CREDENTIALS.

4        THE DEFENDANTS THEN IDENTIFIED VALID GITHUB ACCOUNT

5   CREDENTIALS FOR CORPORATE EMPLOYEES, AND ACCESSED SEVERAL

6   ACCOUNTS BELONGING TO THE EMPLOYEES TO SEARCH FOR AMAZON WEB

7   SERVICES CREDENTIALS.

8        ONCE THE DEFENDANTS FOUND THE AMAZON WEB SERVICES

9   CREDENTIALS, THEY IMMEDIATELY USED THEM TO ACCESS THE AMAZON

10  WEB SERVICES SIMPLE STORAGE SERVICES, COMMONLY KNOWN AS S3, TO

11  SEARCH FOR AND DOWNLOAD SENSITIVE DATA.

12       THEY POSSESSED AND CONTROLLED THE DATA IN ORDER TO INDUCE

13  PAYMENTS FROM THE VICTIM CORPORATIONS, AND THE DEFENDANTS KNEW

14  THAT THE VICTIM CORPORATIONS, SEVERAL OF WHOM WERE

15  HEADQUARTERED IN THE NORTHERN DISTRICT OF CALIFORNIA, WOULD --

16  THAT THE CORPORATIONS WOULD SUSTAIN ECONOMIC LOSSES AND DAMAGE

17  TO THEIR REPUTATIONS IF THE DATA WERE TO BE PUBLICLY DISCLOSED.

18       IN ORDER TO INDUCE THE PAYMENTS, THE DEFENDANTS CONTACTED

19  THE VICTIM CORPORATIONS USING AN ALIAS AND AN ENCRYPTED E-MAIL

20  ACCOUNT.  SPECIFICALLY, THE DEFENDANT USED THE E-MAIL ADDRESS

21  JOHNDOUGHS@PROTONMAIL.COM TO CONTACT THE VICTIM CORPORATIONS TO

22  REPORT A SECURITY VULNERABILITY AND DEMAND PAYMENT IN EXCHANGE

23  FOR DELETION OF THE DATA.

24       THIS DEFENDANT WAS THE PRIMARY DRAFTER OF THESE MESSAGES

25  SENT FROM THE JOHNDOUGHS ACCOUNT; HOWEVER, MR. GLOVER CONSULTED

1    WITH MR. MEREACRE AND HELPED HIM DECIDE WHAT TO SAY.

2         THE DEFENDANT UNDERSTOOD AND AGREED THAT THE -- I'M SORRY.

3         TO REPEAT:  THIS DEFENDANT UNDERSTANDS AND AGREES THAT THE

4    E-MAILS TO AND FROM THE JOHNDOUGHS ACCOUNT WERE TRANSMISSIONS

5    IN INTERSTATE COMMERCE.

6         ON ONE OCCASION, THE DEFENDANTS INFORMED A VICTIM

7    CORPORATION THAT THEY HAD BEEN PAID BY ANOTHER VICTIM

8    CORPORATION FOR IDENTIFYING SECURITY VULNERABILITIES.

9         THEY ALSO SENT THE VICTIM CORPORATIONS A SAMPLE OF THE

10   DATA IN ORDER FOR THE VICTIM CORPORATIONS TO VERIFY THE

11   AUTHENTICITY OF THE DATA.  AFTER EXAMINING THE SAMPLE DATA, THE

12   VICTIM CORPORATIONS COMMUNICATED WITH THE DEFENDANTS ABOUT A

13   PAYMENT IN EXCHANGE FOR THE DELETION OF THE DATA.  IN SOME

14   INSTANCES, THE VICTIM CORPORATIONS INSTRUCTED THE DEFENDANTS TO

15   REGISTER WITH HACKERONE.  HACKERONE IS A SAN FRANCISCO-BASED

16   COMPANY THAT OPERATES BUG BOUNTY PROGRAMS FOR CORPORATIONS.

17   BUG BOUNTY PROGRAMS ARE SERVICES WHEREIN INDIVIDUALS REPORT

18   SECURITY VULNERABILITIES AND RECEIVE RECOGNITION AND

19   COMPENSATION.  EACH CORPORATION ESTABLISHES THE RULES AND

20   REGULATIONS OF ITS INDIVIDUAL BUG BOUNTY PROGRAMS.

21        IN OTHER INSTANCES, THE VICTIM CORPORATIONS STOPPED

22   COMMUNICATING WITH THE DEFENDANTS AND DID NOT PAY FOR THE DATA.

23        THE DEFENDANTS TARGETED THE FOLLOWING COMPANIES:

24        FIRST, UBER.  AS A PART OF THE CONSPIRACY, ON OR ABOUT

25   NOVEMBER 14TH, 2016, THE DEFENDANTS E-MAILED THE CHIEF SECURITY

1    OFFICER AT UBER AT THAT TIME, USING THE JOHNDOUGHS ACCOUNT.

2    THE DEFENDANTS CLAIMED TO HAVE, QUOTE, "FOUND A MAJOR

3    VULNERABILITY IN UBER, 1 WAS ABLE TO DUMP UBER DATABASE AND

4    MANY OTHER THINGS," END QUOTE.

5         IN FACT, WE HAD NOT DISCOVERED A VULNERABILITY DIRECTLY IN

6    UBER'S SOFTWARE, THE DEFENDANTS HAD NOT, BUT HAD ILLEGALLY

7    ACCESSED AND DOWNLOADED 57 MILLION RECORDS CONSISTING OF UBER

8    CUSTOMER DATA AND UBER DRIVER DATA FROM UBER'S AMAZON WEB

9    SERVICES ACCOUNT.

10        UBER REPLIED TO THE DEFENDANTS' MESSAGE THE SAME DAY,

11   BEGINNING AN E-MAIL CORRESPONDENCE THAT WOULD EXTEND THROUGH

12   MID-JANUARY 2017.

13        ON NOVEMBER 14TH, 2016, THE DEFENDANTS PROVIDED A SNIPPET

14   OF THE DATABASE THAT THEY HAD OBTAINED AS PROOF OF THEIR DATA

15   EXFILTRATION.  UBER CONFIRMED THAT IT WAS UBER'S DATA.

16        IN RESPONSE, THE DEFENDANTS WROTE, QUOTE, "KEEP IN MIND

17   THIS IS NOT THE ONLY THINGS I FOUND.  I CAN NAME 100 DIFFERENT

18   MORE THINGS I FOUND.  ME AND MY TEAM EXPECT A HIGH COMPENSATION

19   FOR THIS," END QUOTE.

20        WHEN UBER SAID THAT ITS MAXIMUM BOUNTY AMOUNT WAS

21   GENERALLY $10,000, THE DEFENDANTS REPLIED, QUOTE, "OUR MINIMUM

22   IS 6 DIGITS," END QUOTE.  UBER EVENTUALLY AGREED, ON OR ABOUT

23   NOVEMBER 16TH, 2016, TO MAKE A $100,000 PAYMENT IN BITCOIN

24   THROUGH THE HACKERONE BUG BOUNTY PROGRAM.  THE DEFENDANTS

25   REGISTERED ON HACKERONE TO ACCEPT THE PAYMENT USING THE E-MAIL

1    ADDRESS WILLIAMLOAFMANN@GMAIL.COM.  THIS DEFENDANT ALSO

2    CONTROLLED THAT E-MAIL ACCOUNT.

3         BEFORE MAKING THE PAYMENT, UBER WANTED US -- WANTED THE

4    DEFENDANTS TO SIGN A CONFIDENTIALITY AGREEMENT THAT REQUIRED

5    THE DEFENDANTS TO DESTROY THE DATA THAT HAD BEEN STOLEN.  THE

6    DEFENDANTS INSTRUCTED UBER TO SEND THE PROPOSED AGREEMENT TO

7    BOTH THE JOHNDOUGHS AND SPORTSTICKETS7@GMAIL.COM ACCOUNTS.

8         UBER WANTED THE DEFENDANTS TO SIGN THE CONFIDENTIALITY

9    AGREEMENTS IN THEIR TRUE NAMES, AND FOR APPROXIMATELY THREE

10   WEEKS, THE DEFENDANTS NEGOTIATED THAT AND OTHER TERMS.

11        BY DECEMBER 5TH, 2016, THE DEFENDANTS WERE FRUSTRATED AND

12   SENT AN E-MAIL THAT STATED, IN RELEVANT PART, QUOTE, "PLEASE

13   KEEP IN MIND, THAT THE CONTRACT STATES ALL DATA WILL BE DELETED

14   ONCE THE MONEY IS PAID.  THE BALL IS IN YOUR COURT," END QUOTE.

15        ON NOVEMBER 18TH, 2016, THIS DEFENDANT SIGNED TWO

16   CONFIDENTIALITY AGREEMENTS WITH UBER USING THE FALSE NAME

17   JOHN DOUGHS.  A FEW DAYS LATER, ON NOVEMBER 21ST, 2016, THIS

18   DEFENDANT SIGNED ANOTHER CONFIDENTIALITY AGREEMENT USING THE

19   FALSE NAME WILLIAM LOAFMANN.

20        UBER PAID THE DEFENDANTS THE MONEY IN TWO $50,000

21   INSTALLMENTS, ONE ON DECEMBER 8TH AND ONE ON DECEMBER 14TH,

22   2016.

23        BY JANUARY 2017, UBER HAD DISCOVERED THE TRUE IDENTITY OF

24   THIS DEFENDANT.

25        MR. MEREACRE MET WITH A REPRESENTATIVE FROM UBER AT A

1   RESTAURANT IN A HOTEL IN TORONTO, CANADA ON JANUARY 5TH, 2017,

2   ADMITTED HIS ROLE IN THE DATA BREACH EXFILTRATION, AND SIGNED A

3   CONFIDENTIALITY AGREEMENT.  THE AGREEMENT REQUIRED THIS

4   DEFENDANT TO, AMONG OTHER THINGS, QUOTE, "PROMISE THAT I HAVE

5   NOT AND WILL NOT DISCLOSE ANYTHING ABOUT THE VULNERABILITIES OR

6   MY DIALOGUE WITH UBER TO ANYONE FOR ANY PURPOSE WITHOUT UBER'S

7   WRITTEN PERMISSION," END QUOTE, AND FURTHER, QUOTE, "PROMISE

8   THAT I DID NOT TAKE OR STORE ANY DATA DURING OR THROUGH MY

9   RESEARCH AND THAT I HAVE DELIVERED TO UBER OR FORENSICALLY

10  DESTROYED ALL INFORMATION ABOUT AND/OR ANALYSIS OF THE

11  VULNERABILITIES," END QUOTE.

12      FURTHERMORE, WHILE UBER ULTIMATELY OBTAINED

13  CONFIDENTIALITY AGREEMENTS FROM BOTH THIS DEFENDANT AND

14  MR. GLOVER, NEITHER GLOVER NOR MR. MEREACRE EVER DISCLOSED TO

15  UBER THAT A THIRD INDIVIDUAL, INDIVIDUAL ONE, WAS INVOLVED IN

16  THE UBER DATA BREACH.  THIS DEFENDANT SHARED UBER'S AMAZON WEB

17  SERVICES CREDENTIALS WITH INDIVIDUAL ONE, WHICH ALLOWED HIM,

18  THE INDIVIDUAL ONE, TO ACCESS UBER'S AMAZON WEB SERVICES

19  ACCOUNT.  INDIVIDUAL ONE IS A TECHNICALLY PROFICIENT HACKER AND

20  HE WAS RESPONSIBLE FOR IDENTIFYING THE SPECIFIC ARCHIVE FILE

21  THAT CONTAINED THE 57 MILLION USER RECORDS.

22      GLOVER AND MR. MEREACRE AGREED TO SPLIT THE $100,000

23  PAYMENT WITH INDIVIDUAL ONE IN LIGHT OF HIS CONTRIBUTION.

24      IN THE COURSE OF HIS PARTICIPATION, INDIVIDUAL ONE

25  OBTAINED A COPY OF THE ARCHIVE FILE CONTAINING UBER'S USER

1    RECORDS.  THE DEFENDANTS REQUESTED THAT INDIVIDUAL ONE DELETE

2    HIS COPY, WHICH HE SAID HE WOULD DO, BUT THIS DEFENDANT CANNOT

3    BE CERTAIN THAT HE DID SO.

4         THE SECOND COMPANY INVOLVED IS LYNDA.COM.

5         AS PART OF THE CONSPIRACY THAT THE GOVERNMENT COULD PROVE,

6    ON DECEMBER 11TH, 2016, THESE DEFENDANTS E-MAILED THE SECURITY

7    TEAM AT LINKEDIN USING THE JOHNDOUGHS ACCOUNT TO NOTIFY THE

8    COMPANY, WHICH OWNS LYNDA.COM, THAT THEY HAD FOUND A, QUOTE,

9    "SECURITY FLAW COMPROMISING DATABASES OF LYNDA.COM ALONG WITH

10   CREDIT CARD PAYMENTS AND MUCH MORE," END QUOTE.

11        THE DEFENDANTS WERE WELL AWARE THAT THERE WAS NOT A

12   SECURITY FLAW AND THAT, IN FACT, THEY POSSESSED OVER 90,000

13   CONFIDENTIAL LYNDA.COM USER ACCOUNTS THAT THEY HAD ILLEGALLY

14   ACCESSED AND DOWNLOADED FROM LYNDA.COM'S AMAZON WEB SERVICES

15   ACCOUNT.

16        A FEW HOURS LATER, A MEMBER OF LINKEDIN'S SECURITY TEAM

17   RESPONDED TO THE DEFENDANTS FOR AN EXPLANATION OF THE ALLEGED

18   VULNERABILITY.  THE DEFENDANTS RESPONDED WITH THE FOLLOWING

19   E-MAIL AND ATTACHED A SAMPLE OF THE DATA:  QUOTE, "BEFORE I

20   CONTINUE, I WOULD LIKE TO SAY THAT THIS DOES NOT LOOK GOOD.  I

21   WAS ABLE TO ACCESS BACKUPS UPON BACKUPS, ME AND MY TEAM WOULD

22   LIKE A HUGE REWARD FOR THIS.  THE THINGS WE FOUND WERE SOME OF

23   THE FOLLOWING, LYNDA DATABASE, E-MAIL NAMES ADDRESSES,

24   USERNAMES, SOME PASSWORDS, PAYMENTS, WE ALSO FOUND BACKEND CODE

25   AND MANY MORE.  WE ALSO FOUND PARTIAN LINKEDIN FILES.  BEFORE I

1    CONTINUE, I WOULD LIKE TO ASK THAT YOU GUYS WILL PROMISE TO

2    COMPENSATE FOR THIS FIND," END QUOTE.

3         THE SECURITY TEAM MEMBER AND THE JOHNDOUGHS ACCOUNT

4    CONTINUED TO COMMUNICATE ABOUT THE LYNDA.COM DATABASE, AND THE

5    LINKEDIN IN EXECUTIVE INVITED THE JOHNDOUGHS ACCOUNT TO JOIN

6    LINKEDIN'S BUG BOUNTY PROGRAM THROUGH HACKERONE.

7         AFTER THE INVITATION TO JOIN HACKERONE WAS EXTENDED, THE

8    DEFENDANT E-MAILED THE SECURITY TEAM MEMBER USING THE

9    JOHNDOUGHS ACCOUNT TO INFORM HIM THAT, QUOTE, "PLEASE KEEP IN

10   MIND, WE EXPECT A BIG PAYMENT AS THIS WAS HARD WORK FOR US, WE

11   ALREADY HELPED A BIG CORP WHICH PAID CLOSE TO 7 DIGITS, ALL

12   WENT WELL," END QUOTE.

13        THE DEFENDANTS THEN ESTABLISHED AN ACCOUNT WITH HACKERONE

14   USING THE FALSE NAME WILLIAM LOAFMANN AND PROVIDED FALSE

15   INFORMATION ON THE FORMS AND CONTINUED TO COMMUNICATE WITH

16   LINKEDIN USING THE HACKERONE COMMUNICATION PLATFORM.

17        THE DEFENDANTS STOPPED COMMUNICATING WITH LINKEDIN ON

18   APPROXIMATELY JANUARY 16TH, 2017.  THE COMPANY DID NOT PAY FOR

19   THE DATA OR FOR CONFIDENTIALITY.

20             THE COURT:  MR. MEREACRE, DID YOU HEAR AND UNDERSTAND

21    THE FACTS THE GOVERNMENT IS PREPARED TO PROVE?

22             THE DEFENDANT:  YES, YOUR HONOR.

23             THE COURT:  ARE THOSE FACTS TRUE AND CORRECT?

24             THE DEFENDANT:  YES, THEY ARE, YOUR HONOR.

25             THE COURT:  WHAT IS YOUR PLEA TO COUNT ONE OF THE

1      SUPERSEDING INFORMATION --

2              THE DEFENDANT:  GUILTY, YOUR HONOR.

3              THE COURT:  ALL RIGHT.  THANK YOU.

4          BUT GIVE ME ONE MOMENT, SIR, PLEASE, AND LET ME JUST STATE

5      THE FULL DETAILS OF THAT COUNT ON THE RECORD.

6          THIS ALLEGES THAT BEGINNING IN APPROXIMATELY OCTOBER 2016

7      AND CONTINUING TO APPROXIMATELY JANUARY 2017, IN THE NORTHERN

8      DISTRICT OF CALIFORNIA AND ELSEWHERE, YOU AND

9      BRANDON CHARLES GLOVER CONSPIRED TO VIOLATE 18 U.S. CODE,

10     SECTIONS 1030(A)(7)(B) AND (C)(3)(A), IN VIOLATION OF 18 U.S.

11     CODE, SECTION 1030(B).

12             WHAT IS YOUR PLEA TO THAT COUNT?

13             THE DEFENDANT:  GUILTY, YOUR HONOR.

14             THE COURT:  I -- PART OF MY CONFUSION, I THINK, WAS

15     THAT THE DEFENDANT'S FIRST NAME IS SPELLED WRONG IN THE CASE

16     CAPTION IN THE PLEA AGREEMENT.

17         DO YOU WANT TO JUST ADD THE "R"?

18             MS. KNIGHT:  YEAH, THAT WOULD BE HELPFUL.

19             THE COURT:  AND YOU CAN INITIAL AND DATE IT BEFORE IT

20     GETS FILED.

21             MS. ROONEY:  HIS LAST NAME, YOUR HONOR?

22             THE COURT:  YEAH, HIS LAST NAME.  IT'S MISSING AN

23     "R."

24         (PAUSE IN PROCEEDINGS.)

25             THE COURT:  THANK YOU.  CAN SOMEONE JUST INITIAL -- I

1  SEE THE DEFENDANT, DEFENSE COUNSEL, AND ONE OF COUNSEL'S -- ONE

2  PLAINTIFF'S COUNSEL SIGNATURE.  I'M NOT SURE WHICH --

3          MS. KNIGHT:  IT WAS MINE, YOUR HONOR.

4          THE COURT:  OH, OKAY.

5          MS. KNIGHT:  WOULD YOU LIKE ME TO DO IT AGAIN?

6          THE COURT:  NO, IT'S OKAY.  BUT CAN ONE OF YOU JUST

7  DATE THOSE INITIALS, PLEASE?

8      (PAUSE IN PROCEEDINGS.)

9          THE COURT:  OKAY.  THANK YOU.

10      MR. WEINBERG, I'M SORRY IF I ALREADY ASKED YOU, BUT DO YOU

11  CONCUR IN MR. MEREACRE'S WAIVER OF RIGHTS AND ENTRY OF A GUILTY

12  PLEA TO COUNT ONE OF THE SUPERSEDING INFORMATION?

13          MR. WEINBERG:  I DO, YOUR HONOR.

14          THE COURT:  OKAY.  THE COURT ACCEPTS THE PLEA AND

15  FINDS THAT THE DEFENDANT HAS MADE A KNOWING, INTELLIGENT, FREE

16  AND VOLUNTARY WAIVER OF RIGHTS AND ENTRY OF A GUILTY PLEA.

17  THERE IS AN INDEPENDENT FACTUAL BASIS FOR EACH ELEMENT OF THIS

18  OFFENSE.

19      WOULD YOU LIKE ME TO SET A STATUS CONFERENCE?

20          MS. KNIGHT:  YES, YOUR HONOR.

21          MR. WEINBERG:  YES, YOUR HONOR.

22          THE COURT:  OKAY.  AND WHAT DATE WOULD YOU LIKE?

23          MR. WEINBERG:  SAME DATE?

24          MS. KNIGHT:  WE WOULD LIKE MARCH 18TH OF 2020, YOUR

25  HONOR, PLEASE.

1          THE COURT:  OKAY.  IS THAT DATE ACCEPTABLE FOR OUR

2     CALENDAR?

3          THE CLERK:  YES, IT IS, YOUR HONOR.

4          THE COURT:  OKAY.  SO MARCH 18 OF 2020 AT 9:15 A.M.

5     I AM NOW VACATING COMPLETELY THE MAY 1ST TRIAL DATE AND

6     THE MARCH 25TH PRETRIAL CONFERENCE DATE AND ALL OF THE MARCH

7     FILING DEADLINES.

8          I'M NOT REFERRING THIS TO THE PROBATION OFFICE AT THIS

9     TIME.

10         ANYTHING MORE THAT WE NEED TO DO TODAY?

11         MR. WEINBERG:  JUST FOR THE RECORD, YOUR HONOR, WE

12     ALSO HAVE THIS AGREEMENT WITH THE GOVERNMENT THAT THE FORFEITED

13     MONIES CAN BE USED TOWARDS RESTITUTION.

14         AND IN ADDITION TO THAT, WE WILL BE ASKING THE COURT FOR

15     PERMISSION FOR MR. MEREACRE TO APPEAR BY PHONE AT THE STATUS

16     CONFERENCE AT THE APPROPRIATE TIME.

17         THE COURT:  OKAY.  ALL RIGHT.  JUST PLEASE MAKE THAT

18     REQUEST IN WRITING ACCORDING TO THE COURT'S PROCEDURES.

19         IS THERE ANYTHING MORE FOR MR. MEREACRE TODAY?

20         MS. KNIGHT:  NO, YOUR HONOR.

21         MR. WEINBERG:  NO, YOUR HONOR.

22         MS. KNIGHT:  THANK YOU.

23         THE COURT:  NO?  OKAY.  THANK YOU VERY MUCH.

24         MR. WEINBERG:  THANK YOU, YOUR HONOR.

25         (THE PROCEEDINGS WERE CONCLUDED AT 10:47 A.M.)

1

2

3                         CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  NOVEMBER 12, 2019

19

20

21

22

23

24

25